UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHEL HEATHER POLLOCK,

     Plaintiff,

v.                              Case No:     8:14-cv-2729-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Rachel Heather Pollock, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.**  **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."  *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the

use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

Only after the Commissioner meets this burden does the burden shift back to the claimant to show

that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty*

*v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

Plaintiff, who was nineteen years old at the time, filed an application for SSI on November

12, 2010.  (Tr. 26, 83, 151).  Plaintiff's application was denied initially on February 2, 2011, and

on reconsideration on June 2, 2011.  (Tr. 85, 92).  Plaintiff requested a hearing and on December

3, 2012, a hearing was held before Administrative Law Judge Susan Wakshul (the "ALJ").  (Tr.

33-82).  The ALJ issued an unfavorable decision on December 14, 2012.  (Tr. 19-27).  Plaintiff

requested review of the ALJ's decision, and the Appeals Council denied review on May 5, 2014.

(Tr. 3-5).  Plaintiff initiated the instant action by Complaint (Doc. 1) filed on October 29, 2014.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since November 12, 2010, the application date.  (Tr. 21).  At step two,

the ALJ found that Plaintiff has the following severe impairments: cognitive disorder, depression,

generalized anxiety disorder, psychotic disorder, and posttraumatic stress disorder.  (Tr. 21).  At

step three, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of any of the listed impairments in "20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  (Tr. 21).

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional

capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is limited to simple routine and

- 4 -

repetitive tasks; limited to low stress work defined as no production paced work or quotas; only occasional changes to work setting; only occasional use of judgment; occasional decision making; and only occasional and superficial interaction with others.

(Tr. 23).  At step four, the ALJ found that Plaintiff has no past relevant work.  (Tr. 26).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 26).  Relying on the testimony of a VE, the ALJ found that Plaintiff is capable of working as a stocker, janitor, and cleaner/polisher.  (Tr. 27).  The ALJ concluded that Plaintiff was not under a disability from November 12, 2010, the date Plaintiff's application was filed.  (Tr. 27).

## II.    Analysis

Plaintiff presents two issues on appeal: (1) whether the ALJ erred by failing to properly evaluate the opinion evidence of record; and (2) whether the ALJ's decision is supported by substantial evidence.  (Doc. 18 p. 17, 20).  The Court addresses each argument in turn.

### a)  Whether the ALJ erred by failing to properly evaluate the opinion evidence of record.

Plaintiff argues that the ALJ erred by failing to evaluate or state the weight he accorded the opinion of Jeffrey M. Merin, Ph.D.  (Doc. 18 p. 20).  Plaintiff contends that this error is especially glaring given Dr. Merin's opinion that Plaintiff would need a job coach, a limitation the ALJ did not include in her RFC finding.  (Doc. 18 p. 20).  In addition, Plaintiff contends that the ALJ erred by failing to mention the evaluation or opinion of Ms. Robynanne Cash-Howard, a vocational evaluator.  (Doc. 18 p. 21).  Finally, Plaintiff argues that the ALJ erred by giving "no weight" to the opinion of Greg C. Marone, Ed.D.  (Doc. 18 p. 23).

In response, Defendant acknowledges that the ALJ erred in not assigning weight to Dr. Merin's opinion, but argues that the error is harmless as Dr. Merin's opinion supports the ALJ's

decision. (Doc. 20 p. 7). Defendant argues that the ALJ was not required to specifically explain the way he evaluated the opinion of Ms. Cash-Howard, as her opinion is a non-medical source. (Doc. 20 p. 8). Defendant contends that Ms. Cash-Howard's opinion supported the ALJ's decision, in any event, and therefore remand is improper. (Doc. 20 p. 8). Finally, Defendant argues that the ALJ properly discounted the opinion of Dr. Marone. (Doc. 20 p. 8).

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79. The Eleventh Circuit explained that without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). Applying this rule of law, the Eleventh Circuit found that an ALJ had erred by failing to mention a treating doctor's medical opinion or to discuss pertinent elements of an examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. 631 F.3d at 1179. The Eleventh Circuit explained that "[i]t is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id.*

The Court begins with the opinion of Dr. Merin. On September 19, 2011, Dr. Merin complete a Psychological Report of Plaintiff. (Tr. 353-59). A mental status evaluation indicated that Plaintiff was oriented in all spheres, was cooperative and compliant, and put forth her best

effort and motivation on all examinations.  (Tr. 354).  Her communication skills were within normal limits with regard to receptive and expressive abilities.  (Tr. 354-55).  Information, however, was concrete and simplistic.  (Tr. 355).  Plaintiff described herself as very happy at that time in response to a perceived boyfriend.  (Tr. 355).  Dr. Merin noted that Plaintiff previously experienced marked periods of depression and anxiety. (Tr. 355).

Dr. Merin administered numerous tests including the Wechsler Memory Scale- Third Edition [selected subtests]; Rey Osterrieth Complex Figure Drawing; Digit Span; Controlled Oral Word Fluency Exam; Trail-Making Exam; Bender Gestalt Visual Motor test; Boston Clock Drawing Test; Thematic Apperception Test; Sentence Completion Test; and the Beck Depression Inventory-II. (Tr. 355). Results of the Rey Osterrieth Complex Figure Drawing test indicated significant impairments in long and short term memory. (Tr. 356).  Dr. Merin stated that Plaintiff was "unable to effectively organize, plan and retrieve visual stimuli. Organization and planning skills were profoundly impaired." (Tr. 356).  The Digit Span test indicated that simple attention and concentration auditory/verbal was poor.  (Tr. 356).  On the Controlled Oral Word Fluency Exam, Plaintiff frequently lost track of task instructions and included unacceptable answers. She had to be redirected several times during the evaluation to maintain task orientation.  (Tr. 356). On the Trail-Making test, Ms. Pollock scored in the lowest one percent, which Dr. Merin stated was the significantly impaired range and revealed the degree to which processing speed, mental control and cognitive flexibility were poorly represented.  (Tr. 356).

On the Boston Clock Drawing test, Plaintiff's performance revealed significant neurocognitive impairments that interfere with auditory attention and executive processing.  (Tr. 357).  Personality testing indicated that Plaintiff tries to project a favorable facade.  (Tr. 357). Dr. Merin found that Plaintiff's inability to effectively grasp, analyze and solve novel problems leads

to marked periods of uneasiness, restlessness and emotional tension. (Tr. 357). Instead, Plaintiff relies on others, imagined relationships, and/or fanciful thoughts in order to resolve negative emotions and anxieties. (Tr. 357).

Dr. Merin's diagnostic impression was Cognitive Disorder, NOS; Generalized Anxiety Disorder; traits associated with dependent personality; possible early childhood head trauma, per client's report; and psychosocial and vocational stressors. (Tr. 359). Dr. Merin assigned Plaintiff's Global Assessment of Functioning (GAF) score as 50. (Tr. 359). Dr. Merin recommended that those with whom Plaintiff worked should insure that all goals and responsibilities are clearly articulated, in written form, and reviewed on a frequent basis. (Tr. 358). Dr. Merin stated that simplicity and repetition are recommended. (Tr. 358-59). Dr. Merin stated Plaintiff would require a job coach. (Tr. 359). Dr. Merin also recommended a psychiatric evaluation to determine if medication would be appropriate. (Tr. 359).

In her opinion, the ALJ addressed Dr. Merin's evaluation as follow:

> Later in September of 2011, Dr. Jeffrey Merin performed a psychological examination on the claimant. He noted that the claimant had not been hospitalized or treated for mental impairments. The claimant's medical history appeared to be unremarkable. The claimant reported to Dr. Merin that she was very happy in response to a perceived boyfriend. Based on psychological testing, Dr. Merin diagnosed the claimant with cognitive disorder, generalized anxiety disorder, and a GAF score of 50 (Exhibit 8F). The undersigned notes that the GAF score that Dr. Merin assigned to the claimant is inconsistent with his observations of the claimant's condition.

(Tr. 24). As Plaintiff notes and Defendant acknowledges, the ALJ never stated the weight she accorded the opinion of Dr. Merin.

In this case, the Court finds that the ALJ did not err in his treatment of the evidence from Dr. Merin. Although the ALJ did not state the weight he accorded Dr. Merin's report, the ALJ's opinion demonstrates that she considered his report and factored it into her RFC finding. Dr.

Merin's opinion that Plaintiff be limited to jobs requiring simplicity and repetition is reflected in the ALJ's limitation that Plaintiff can only perform work involving simple, routine, and repetitive tasks and no more than occasional use of judgment or decision-making. (Tr. 23). In this way, contrary to *Winschel*, the ALJ discussed pertinent elements of Dr. Merin's opinion and the ALJ's conclusion suggests that those elements were considered.

While the ALJ did not include in her RFC finding any reference to Plaintiff's need for a job coach, as opined by Dr. Merin, the Court does not find that this is a basis for remand. The ALJ's RFC determination limiting Plaintiff to work requiring simple and routine tasks, to no production paced work or quotas, to only occasional changes to work setting, only occasional use of judgment and decision making, and only occasional and superficial interactions with others accommodates Dr. Merin's opinion that Plaintiff would need a job coach. In this way, there is no inconsistency between the ALJ's RFC determination and the opinion of Dr. Merin.

As to the opinion of Ms. Cash-Howard, the Court agrees with Defendant that the ALJ did not err by failing to specifically discuss the Vocational Evaluation Report completed by Ms. Cash-Howard on March 23, 2012. As Defendant correctly notes, Ms. Cash-Howard is not a medical professional but a vocational evaluator and, thus, her report is an opinion from a non-medical source acting in a professional capacity. Although an ALJ is required to consider such opinions, there is no requirement that an ALJ must specifically evaluate these opinions in making a disability determination. In this case, the ALJ stated that she reached her RFC determination "[a]fter careful consideration of the entire record." (Tr. 23). Accordingly, the Court finds that the ALJ did not err in her treatment of the report from Ms. Cash-Howard.

Finally, as to the medical records from Dr. Marone, the ALJ addressed these records as follows:

In November of 2012, Dr. Gregory Marone consultatively examined the claimant. Results of the claimant's WAIS III taken in high school were a verbal IQ of 79, performance IQ of 89, and a full scale IQ of 82, which were within the low average range but the claimant's school psychologist found that the claimant was not a good candidate for Specific Learning Disabilities program. The claimant graduated from high school through ESE programs with a 3.85 GPA (Exhibit 12F, p.3, 4). Dr. Marone described the claimant as immature, dependent, with some difficulties with focus and attention. Results of recent WAIS IV testing showed a verbal IQ of 87, perceptual reasoning IQ of 65, working memory index of 71, processing speed index of 68, and a full scale IQ of 69, which falls in the mentally deficient range of cognitive functioning. However, Dr. Marone found these score invalid because the claimant's high scores on measures of active vocabulary and verbal concept formation were not consistent with a mentally retarded hypothesis (Exhibit 12F, p.6). He also noted that the claimant had some deficiency in her auditory memory and concentration (Exhibit 12F, p.7). Dr. Marone diagnosed the claimant with reading disorder, arithmetic disorder, generalized anxiety disorder with panic attacks, personality disorder, mild mental retardation (by global measurement) and a GAF score of 50 (Exhibit 12F, p.8).

. . . .

After examining the claimant in November of 2012, Dr. Gregory Marone concluded that the claimant was not capable of working without a highly supportive employment setting, doing only repetitive and unchanging tasks. The claimant's rate of work and mastering new tasks would be substandard. The claimant would have marked limitations completing a normal workday or workweek without psychological interruptions, travelling using public transportation and responding appropriately to changes in the work setting (Exhibit 12F, p.8). The undersigned assigns no weight to Dr. Marone's opinion because it is based on only one examination and the restrictive limitation are not supported by any facts, findings, or bases. Dr. Marone's opinion is also inconsistent with the claimant's own testimony that she would be able to travel on a public bus if it were closer to her home.

(Tr. 25-26).

The Court finds that the ALJ did not err in her treatment of the opinion of Dr. Marone. Dr. Marone only examined Plaintiff a single time and was not a treating physician. Therefore, his opinion was not entitled to any special weight. *See Wainwright v. Comm'r Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007). The ALJ clearly articulated the weight she accorded

Dr. Marone's opinion and provided the reasons for her decision. Accordingly, the Court will not reverse and remand for the ALJ's treatment of Dr. Marone's opinion.

   **b) Whether the ALJ's decision is supported by substantial evidence.**

   Plaintiff argues that the ALJ's finding that Plaintiff can perform substantial gainful activity is not supported by substantial evidence. (Doc. 18 p. 17). Unsurprisingly, Defendant contends that substantial evidence supports the ALJ's finding, and that the ALJ applied the proper legal standards. (Doc. 20 p. 4).

   As noted above, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158. In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin*, 894 F.2d at 1330; *Foote*, 67 F.3d at 1560. It is the claimant's burden to establish that she is disabled and, consequently, to produce evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)).

   In this case, the Court finds that the ALJ's finding that Plaintiff can perform substantial gainful activity is supported by substantial evidence. First, the report of consultative examiner Steven Abraham, Psy.D., supports the ALJ's RFC finding. Dr. Abraham conducted a general clinical evaluation of Plaintiff on January 19, 2011. (Tr. 300-302). Dr. Abraham found that while Plaintiff was mildly impaired in her mental flexibility and mental computation, her attention,

concentration, and speed of processing were within normal limits. (Tr. 302). Dr. Abraham found that Plaintiff's memory and written computation were adequate and that Plaintiff's insight, reasoning, and judgment were fair. (Tr. 302). Dr. Abraham further found that Plaintiff's general thought processes were coherent, logical, and goal directed. (Tr. 302). These findings are consistent with and support the ALJ's finding that Plaintiff can perform a full range of work with certain nonexertional limitations. (Tr. 23).

In addition, the report of Dr. Merin also supports the ALJ's RFC finding. After examining, Plaintiff, Dr. Merin opined that Plaintiff could perform simple, repetitive work that did not require much reasoning or judgment. (Tr. 358-59). Dr. Merin's opinion, including the recommendation that Plaintiff needs a job coach as described above, supports the ALJ's decision to limit Plaintiff's RFC to work involving only simple, routine, and repetitive tasks and no more than occasional use of judgment or decision-making. (Tr. 23).

Finally, as the ALJ noted in her opinion, Plaintiff's activities of daily living supports the ALJ's finding that Plaintiff is not as limited as alleged. The record indicates that she received vocational training in the culinary arts and she received good grades for classes she took during this training. (Tr. 188, 301). Plaintiff reported that her daily routine consisted of cleaning her house, doing laundry, creating artwork, sleeping, watching TV, talking on the telephone, working out at the gym and using her computer. (Tr. 301). Plaintiff testified at the administrative hearing that she eats at restaurants with family and friends, regularly goes to the mall, and occasionally attends concerts. (Tr. 301). "[A]n ALJ may consider a claimant's daily activities at the fourth step of the evaluation process to determine RFC and ability to perform past relevant work and to discredit subjective complaints." *Rouse v. Astrue*, 2012 WL 3744515, at *9 (M.D. Fla. Aug. 10,

2012) (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)).  Plaintiff's daily activities belie her claim that she is unable to perform the limited range of work found by the ALJ.

Substantial evidence also supports the ALJ's finding that Plaintiff could perform a significant number of jobs that exist in the national economy.  At the administrative hearing, the ALJ asked the VE whether a hypothetical individual with the same RFC as Plaintiff could perform jobs that exist in the national economy. (Tr. 74).  The VE responded in the affirmative and testified that such a person could work as a stocker, janitor, or cleaner-polisher.  (Tr. 74-75).  The VE's testimony constituted substantial evidence that Plaintiff retained the ability to perform a significant number of jobs that exist in the national economy.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (providing that "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").

Substantial evidence supported the ALJ's RFC finding and her finding that Plaintiff could perform a significant number of jobs that exist in the national economy.  Accordingly, the Court will affirm the decision of the Commissioner.

**III.    Conclusion**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 25, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties